UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN PAUL FANLO,<br><br>                              Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>                              Defendant. | Case No.:  17cv1617-LAB (BLM)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AND REMANDING FOR FURTHER PROCEEDINGS**<br><br>**[ECF Nos. 15, 16]** |

Plaintiff John Paul Fanlo brought this action for judicial review of the Social Security Commissioner's ("Commissioner") denial of his claim for disability insurance benefits.  ECF No. 1.  Before the Court are Plaintiff's Motion for Summary Judgment [ECF No. 15-1 ("Pl.'s Mot.")], Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment [ECF Nos. 16-1 and 19-1[1] ("Def.'s Mot.")], and Plaintiff's Reply to Defendant's Opposition [ECF No. 20 ("Pl.'s Reply")]. Defendant did not file a Reply.

---

[1] Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment appear on the docket as two documents, numbers 15 and 19.  However, the contents of the documents are the same.  For clarity, the Court will refer to Defendant's cross-motion and opposition as one document, namely, "Def.'s Mot." and will cite to ECF No. 16-1.

This Report and Recommendation is submitted to United States District Judge Larry A. Burns pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.1(c) of the United States District Court for the Southern District of California. For the reasons set forth below, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED,** Defendant's Cross-Motion for Summary Judgment be **DENIED**, and the case be remanded for further proceedings.

## I.   PROCEDURAL BACKGROUND

On November 24, 2015, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning on May 1, 2015. See Administrative Record ("AR") at 161-162. The claim was denied initially on February 18, 2016, and upon reconsideration on May 24, 2016, resulting in Plaintiff's request for an administrative hearing. Id. at 82, 97-98.

On November 16, 2016, a hearing was held before Administrative Law Judge ("ALJ") Robin L. Henrie. Id. at 30-70. Plaintiff was represented at the hearing by an attorney, Ms. Linh Nguyen. Id. at 30; see also id. at 153-154. Plaintiff's main attorney of record was Don Jorgensen. Id. at 153-154. Plaintiff and an impartial vocational expert testified at the hearing. See id. at 30-70. In a written decision dated February 14, 2017, ALJ Henrie determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from May 1, 2015 through the date of the ALJ's decision. Id. at 15, 30. On April 14, 2017, Plaintiff requested review by the Appeals Council. Id. at 158. The Appeals Council denied review of the ALJ's ruling, and the ALJ's decision therefore became the final decision of the Commissioner. Id. at 1-3.

On August 10, 2017, Plaintiff filed the instant action seeking judicial review by the federal district court. See ECF No. 1. On January 2, 2018, Plaintiff filed a timely motion for summary judgment alleging the ALJ committed legal error by failing to properly consider the opinion of Plaintiff's treating physician, Dr. George Flood. See Pl.'s Mot. Plaintiff asks the Court to overturn the final decision of the Commissioner and award Plaintiff his disability insurance benefits without remand, or alternatively, to remand the case to the Social Security Administration

17cv1617-LAB (BLM)

("SSA"). Id. at 6-7. On January 30, 2018, Defendant filed an opposition to Plaintiff's motion for summary judgment and a cross-motion for summary judgment asserting that the ALJ properly considered Dr. Flood's opinion and treatment history. See Def's. Mot. On February 16, 2018, Plaintiff timely filed a reply to Defendant's opposition and cross-motion for summary judgment. Pl.'s Reply.

## II.  ALJ'S DECISION

On February 14, 2017, the ALJ issued a written decision in which she determined that Plaintiff was not disabled as defined in the Social Security Act. AR at 17-30. Initially, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since May 1, 2015, the alleged onset date. Id. at 17. She then considered all of Plaintiff's medical impairments and determined that the following impairments were "severe" as defined in the Regulations: "disorders of the back/spine (degenerative and discogenic), anxiety disorder, and post-traumatic stress disorder (20 CFR 404.1520(c))." Id. At step three, the ALJ found that Plaintiff's medically determinable impairments or combination of impairments did not meet or medically equal the listed impairments. Id. at 18. In reaching this decision, the ALJ noted that "no acceptable medical source in the record opined that the claimant's physical impairment meets or equals the criteria of a listing, including the State agency medical consultants." Id.

To determine at step four whether Plaintiff could return to his past work, the ALJ performed a residual functional capacity ("RFC") analysis. See id. at 18-28. The ALJ considered Plaintiff's severe impairments and determined that his RFC permitted "light work activity" including the ability to perform sedentary work. Id. at 28. The ALJ found that Plaintiff has the RFC to perform the full range of light and sedentary unskilled work with the following limitations:

> Lifting more than 20 pounds at a time, on more than an occasional basis; lifting and then carrying articles weighing more than 10 pounds, on more than a frequent basis; standing or walking more than 15-20 minutes at one time, and no more than 6 hours in an 8-hour work day with a cane option to walk; sitting more than 15-20 minutes at one time, and no more than 6 hours in an 8-hour workday; more than occasional stooping, bending, twisting, or squatting; working on the floor (e.g., no kneeling, crawling or couching); ascending or descending full flight of

3

stairs; overhead lifting or overhead reaching; more than frequent reaching, handling, and fingering; working in other than a low stress environment, which means: No working with the general public and no working with crowds of co-workers, or 'rare' verbal contact with supervisors and co-workers; work that is more than unskilled and low concentration, which means the claimant has the ability to be alert and attentive to only routine unskilled work tasks; work that is more than unskilled and low memory, which means: the ability to understand, remember and carry out only '<u>simple</u>' work instructions; and food control work duties.

AR 20.

In reaching this decision, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." <u>Id.</u> The ALJ notes that she "also considered opinion evidence in accordance with the requirements" of the regulations. <u>Id.</u> The ALJ noted that Plaintiff alleged disability due to his low back pain, neck pain, left leg numbness, right shoulder pain, left knee pains, episodic coughing, and PTSD. <u>Id.</u> at 24. However, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." <u>Id.</u> at 22. Having completed the RFC findings, the ALJ determined that Plaintiff could not return to his past work as a Transportation Security Officer. <u>Id.</u> at 28. However, the ALJ determined that Plaintiff was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," including the representative occupations of an addresser, mail clerk or a document preparer. <u>Id.</u> at 29. The ALJ therefore found that Plaintiff was not disabled. <u>Id.</u> at 29-30.

## III.  <u>STANDARD OF REVIEW</u>

Section 405(g) of the Social Security Act permits unsuccessful applicants to seek judicial review of the Commissioner's final decision. 42 U.S.C. § 405(g). The scope of judicial review is limited in that a denial of benefits will not be disturbed if it is supported by substantial evidence and contains no legal error. <u>Id.</u>; <u>see also</u> <u>Batson v. Comm'r Soc. Sec. Admin.</u>, 359 F.3d 1190, 1193 (9th Cir. 2004).

Substantial evidence is "more than a mere scintilla, but may be less than a preponderance." Lewis v. Apfel, 236 F.3d 503, 509 (9th Cir. 2001) (citation omitted). It is "relevant evidence that, considering the entire record, a reasonable person might accept as adequate to support a conclusion." Id. (citation omitted); see also Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1011 (9th Cir. 2003). "In determining whether the [ALJ's] findings are supported by substantial evidence, [the court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the [ALJ's] conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citations omitted). Where the evidence can reasonably be construed to support more than one rational interpretation, the court must uphold the ALJ's decision. See Batson, 359 F.3d at 1193. This includes deferring to the ALJ's credibility determinations and resolutions of evidentiary conflicts. See Lewis, 236 F.3d at 509.

Even if the reviewing court finds that substantial evidence supports the ALJ's conclusions, the court must set aside the decision if the ALJ failed to apply the proper legal standards in weighing the evidence and reaching his or her decision. See Batson, 359 F.3d at 1193. Section 405(g) permits a court to enter judgment affirming, modifying, or reversing the Commissioner's decision. 42 U.S.C. § 405(g). The reviewing court may also remand the matter to the Social Security Administration for further proceedings. Id.

## IV.    DISCUSSION

Plaintiff argues that the ALJ committed legal error because she did not properly consider the opinion of Plaintiff's treating physician, Dr. George Flood. Pl.'s Mot. at 4-5. Plaintiff states that the ALJ rejected Dr. Flood's opinion "due to a lack of supporting progress notes from the Department of Veterans Affairs (VA)." Id. at 5 (citing AR 26). Plaintiff explains that "the ALJ questions the severity of [Plaintiff's] mental impairment based on his lack of interest in psychotherapy," but that Plaintiff eventually sought psychotherapy treatment in June 2015, which is near the period of Plaintiff's onset date. Id. (citing AR 24, 388). Plaintiff also explains that the ALJ rejected Dr. Flood's opinion "because the medical records appear to show evidence of improvement." Id. at 6 (citing AR 26). However, Plaintiff argues that "[c]ycles of improvement

are common occurrences when considering mental health issues" and "must be taken in context and do not always mean that a claimant is capable of working effectively in a workplace." Id. (internal citations omitted). Plaintiff further explains that the references of improvement were made during a period that Plaintiff was not working or in school. Id. at 7 (internal citation omitted). Finally, Plaintiff argues that the ALJ gave significant weight to a state agency physician who never examined Plaintiff in person, and "[t]he ALJ erred by giving greater weight to the non-examining physician." Id. at 7-8.

Defendant argues that the ALJ properly considered the medical evidence, including the opinion of treating physician Dr. Flood. Def.'s Mot. at 4-5. In support, Defendant claims that the "ALJ was tasked with resolving starkly conflicting medical opinions regarding Plaintiff's mental functioning." Id. at 5 (citing AR 19, 26-28, 78-80, 94-95, 470-75). Defendant argues that on one end, "Dr. Flood stated Plaintiff was 'unable to meet professional standards' in various areas of cognitive and social functioning, including but not limited to, understanding short and simple instructions and working around others." Id. at 5 (citing AR 26, 472). Defendant argues that on the other end, "state agency physicians G. Rivera-Miya, M.D., and Yanira Olaya, M.D., each found Plaintiff was not significantly limited in many areas of cognitive and social functioning including, but not limited to, performing simple tasks and getting along with coworkers." Id. (citing AR 19, 27-28, 78-80, 94-95). Defendant contends that the ALJ set forth "specific and legitimate reasons supported by substantial evidence explaining how he weighed the evidence." Id. Specifically, defendant argues that the ALJ explained that "Plaintiff's activities of daily living, observed behavior, mental-status examinations, and treatment history best comported with Drs. Rivera-Miya and Olaya's opinions." Id. at 5-8.

In his reply, Plaintiff argues that "as a treating physician, Dr. Flood has been in the position to monitor and assess Fanlo's capabilities." Pl.'s Reply at 4. Plaintiff argues that "[t]he ALJ's rejection of Dr. Flood's opinion that Fanlo is unable to meet competitive standards in the workplace on a sustained basis lacks the support of substantial evidence." Id.

**A. Relevant Law**

The opinion of a treating doctor generally should be given more weight than opinions of

doctors who do not treat the claimant.  See Turner v. Comm'r of Soc. Sec., 613 F. 3d 1217, 1222 (9th Cir. 2010) (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995)).  If the treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons supported by substantial evidence in the record.  Id. (citing Lester, 81 F.3d at 830-31).  Even when the treating doctor's opinion is contradicted by the opinion of another doctor, the ALJ may properly reject the treating doctor's opinion only by providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Id. (citing Lester, 81 F.3d at 830-31).  This can be done by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating [his] interpretation thereof, and making findings."  Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  "The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."  Orn v. Astrue, 495 F.3d 625, 632 (9th Cir. 2007) (quoting Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988)).  "The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record."  Townsend v. Colvin, 2013 WL 4501476, *6 (C.D. Cal. Aug. 22, 2013) (quoting Lester, 81 F.3d at 830–31) (citing Morgan, 169 F.3d at 600).

If a treating doctor's opinion is not afforded controlling weight, "the ALJ must consider the 'length of the treatment relationship and the frequency of examination' as well as the 'nature and extent of the treatment relationship' . . . .  In addition, the ALJ must still consider the other relevant factors such as 'the amount of relevant evidence that supports the opinion and the quality of the explanation provided' and 'the consistency of the medical opinion with the record as a whole.'"  West v. Colvin, 2015 WL 4935491, at *8 (D. Or. Aug. 18, 2015) (quoting Orn, 495 F.3d at 631; 20 C.F.R. §§ 416.927(c); and 404.1527(c)).

/ / /

/ / /

7

**B. Plaintiff's Relevant Medical History and VA Records[2]**

On March 24, 2014, Plaintiff received a determination of 100% disability from the Veterans Administration ("VA") effective October 1, 2013 for depression related to his PTSD. AR 492. The decision stated:

> The evaluation of chronic posttraumatic stress disorder (PTSD) is increased to 100 percent disabling effective October 1, 2013. An evaluation of 100 percent is assigned from October 1, 2013, the day that we received your claim for depression (related to PTSD – combat). We have assigned a 100 percent evaluation for your PTSD based on:
>
> • Total occupational and social impairment
>
> • Gross impairment in communication
>
> • Gross impairment in thought process
>
> • Intermittent inability to perform activities of daily living
>
> • Intermittent inability to perform maintenance of minimal personal hygiene
>
> • Persistent danger of hurting others
>
> • Persistent danger of hurting self
>
> • Difficulty in adapting to a work-like setting
>
> • Difficulty in adapting to stressful circumstances
>
> • Difficulty in adapting to work
>
> • Inability to establish and maintain effective relationships
>
> • Near-continuous depression affecting the ability to function independently, appropriately and effectively
>
> • Near-continuous panic affecting the ability to function independently, appropriately and effectively

_____

[2] Plaintiff does not challenge the ALJ's assessment regarding his physical functioning limitations, but only whether "the ALJ properly rejected Dr. Flood's [Plaintiff's treating psychiatrist] opinion." Pl.'s Mot. at 4-9. Accordingly, the relevant medical history summarized herein relates to Plaintiff's mental health limitations, but does not address Plaintiff's physical functioning limitations.

8

- Suicidal ideation

- Disturbances of motivation and mood

- Flattened affect

- Impaired judgment

- Panic attacks more than once a week

- Anxiety

- Chronic sleep impairment

- Depressed mood

- Forgetting directions

- Forgetting names

- Forgetting recent events

- Mild memory loss

- Suspiciousness

Id. at 492-493.

On February 23, 2015, Plaintiff saw Dr. Kevin Flood, the VA staff psychiatrist, for a psychiatric evaluation. Id. at 894. Plaintiff's chief complaint was "[his] anger problem." Id. Dr. Flood noted that Plaintiff was taking his psychiatric medications, and had done a lot of psychotherapy, but was not necessarily interested in more. Id. Dr. Flood evaluated Plaintiff and concluded that "Mr. Fanlo [was] fairly stable on reasonable medications for PTSD. Will continue divalproex 500 mg/d, venlafaxine 225 mg/d, and zolpiden 10 mg at bedtime. Will increase prazosin via escalation to 5 mg at bedtime." Id. at 898.

On May 6, 2015, Plaintiff saw his primary care physician, Dr. Paul Simon. Id. at 394. Plaintiff reported "outbursts of anger, had a confrontation involving a firearm with his family. He states his wife took away his gun." Id. at 394. Dr. Simon's assessment indicates that Plaintiff "has chronic headaches," and "continues to have anger issues." Id. at 397-398.

On June 15, 2015, Plaintiff saw Dr. Flood for a follow-up appointment. Id. at 385. Plaintiff reported that his "chief complaint" was that he needed anger management. Id. Dr. Flood

clinically examined Plaintiff, conducted a mental examination, and provided medical support for Plaintiff's PTSD. Id. Dr. Flood noted that Plaintiff "quit [his] job with TSA. . . threatened two of his coworkers. Had to resign." Id. at 386. Dr. Flood further indicated that Plaintiff was not interested in psychotherapy at that time. Id. Dr. Flood found that Plaintiff had a "calm and cooperative" attitude, but his mood was "very angry" and "very stressed out." Id. at 387. Plaintiff's primary diagnosis was "PTSD from combat trauma." Id. Dr. Flood opined that Plaintiff's relevant stressors were "work stress." Id. Dr. Flood noted that Plaintiff had "severe" effects of psychiatric symptomology on overall functioning. Id. at 388.

On June 16, 2015, Plaintiff participated in a brief phone assessment to determine his initial eligibility for a research study regarding in-home exposure therapy for Veterans with PTSD. Id. at 384. The research therapist's note indicates that the study staff determined that Plaintiff was not eligible, but the reasons for his ineligibility were not stated. Id. The record indicates that Dr. Flood confirmed receipt of this note. Id.

On July 7, 2015, Plaintiff attended a group psychiatry session for "Anger Management for PTSD." Id. at 383. Plaintiff "was an active participant in [the] group session" which focused on treatment for anger management, including breathing techniques. Id.

On July 23, 2015, Dr. Simon evaluated Plaintiff for a chief complaint of "itching arms, stomach, back 2 weeks." Id. at 842. Plaintiff also reported "continued anger. . . He has spoken about taking his meds to end his life although he states he is prevented by following through with suicidal plans as he needs to continue to be present for his wife and children." Id. at 843.

On August 21, 2015, Mr. Michael Maus, R.N., completed an "In-Home Assessment" of Plaintiff's medical needs and environment. Id. at 357-364. Plaintiff's assessment indicates that he is "easily triggered, wide range of moderate to severe mood swings" and that he "acts on impulse." Id. at 361. The assessment further indicates:

> Vet's mother, Dina Fanlo, is living with them and helping care for their young son. Vet is trying to go to culinary arts school, but is having difficulty regulating his moods and behavior. He is considering taking time from school until he is in better mental/emotional health. [Vet's spouse] had to quit her outside employment in

order to ensure Vet's safety as well as her son's safety in light of Vet's frequent and severe mood swings. Vet is generally friendly, however says that changes quickly. . . . [Vet's spouse] works with Vet on self-care as much as she can however Vet remains somewhat impulsive. Vet also has chronic and severe lower back pain.

Id. at 363.  Mr. Maus also assessed Plaintiff's caregiver, his spouse, who reported that "her stress levels are at 90% due to Veteran mood swings which are unpredictable." Id. at 365.  She reported that "[s]ome days are fine but most days are not." Id. Plaintiff's spouse also reported that Plaintiff's "anger is predominant and difficult to predict." Id.

On September 29, 2015, Plaintiff saw Anne Nisenzon, Ph.D., a VA staff psychologist, and Dr. Simon, for "PTSD, insomnia/nightmares." Id. at 354. Plaintiff stated that two of his psychiatric medications caused him "increase[d] grogginess, and difficulty staying alert while in classroom." Id.

On October 7, 2015, Plaintiff saw Dr. Nisenzon, and requested a referral to a different psychiatrist as he was experiencing challenges accessing his current psychiatrist. Id. at 341-343. Plaintiff reported that his mood had been stable, "although he continues to get angry sometimes." Id. He said he was planning to visit the Philippines for 3 weeks this month, and he would like to "resume treatment for anger management when he returns." Id. Plaintiff's record also indicates that he completed a Comprehensive Suicide Risk Assessment on October 7, 2015. Id. at 343.  Plaintiff reported that he had a prior suicide attempt on February 4, 2015. Id. Plaintiff said that on February 4, 2015, he "pick[ed] up his gun and told his wife that he was going to try and end it in June." Id. Plaintiff's wife reportedly took his weapon and encouraged him to go back on his medication. Id. at 343-344. Since then, Plaintiff "return[ed] to school, exercise[d], and decreased his depression." Id. Plaintiff still said he had "occasional thoughts of suicide, but denied any plans, intent, or suicidal behavior." Id.

On October 7, 2015, Plaintiff was evaluated by his primary care physician, Dr. Simon. Id. at 345-350.  Plaintiff reported that "he still has difficulty with anger" and "note[d] bouts of anger during driving and with comments of someone who confronted him about being a soldier at the gym." Id. at 345. Dr. Simon assessed Plaintiff with "chronic back pain" and noted that he has a history of PTSD. Id. at 345-348.

On November 23, 2015, Mr. Maus, R.N., completed another in-home assessment of Plaintiff and noted that Plaintiff, a "Vet and his caregiver traveled to the Philippines for 19 days, returned a couple weeks ago." Id. at 338. Mr. Maus's notes indicate that Plaintiff "[was] having trouble adjusting back to regular daily living" and was struggling with obtaining employment due to his reactive nature. Id.

On January 12, 2016, Plaintiff met with a licensed social worker, Ms. Natasha Schwarz, and reported that he "is now stable on medication and although medication is helpful in reducing intense anger and violent behavior, he has been experiencing reduced appetite, low energy and feels low to no motivation to return to school, go to the gym or engage in playful activities with his son – reports most days he sits on couch for majority of day." Id. at 321-323.

On January 21, 2016, Plaintiff's medical record indicates that his wife had an "email encounter" with Mr. Maus, the nurse who conducted Plaintiff's in-home assessments, regarding "behavioral concerns regarding Vet and questions about possible side effects of the Fluoxetine." Id. at 782. Mr. Maus recommended to Plaintiff's wife that Plaintiff schedule an appointment with his psychiatrist for a medication review to discuss the response to that medication in detail. Id. Dr. Flood confirmed receipt of this note. Id. at 783.

On January 27, 2016, Plaintiff saw a psychiatrist, Dr. Jorge Porras, and reported "sexual side effects from Prozac since starting in 12/2015 as prescribed by outpatient psychiatrist, Dr. Flood." Id. at 304. Plaintiff also reported stopping another medication, Prozasin, due to nightmares. Id. Plaintiff reported feeling "numb" and stated that he did not want to do anything, suffered from poor sleep and felt tired. Id. at 305.

On February 4, 2016, Plaintiff met again with Ms. Schwarz, and reported that he "canceled his enrollment in anger management based on worry that he will not be able to control his anger outbursts in a group setting." Id. at 309. Plaintiff expressed a desire to "focus on individual therapy." Id. Plaintiff's mood was "stated as depressed." Id. Plaintiff also reported feeling "hopeless at times and depressed mood impacts his activities." Id. Plaintiff reported that he had been applying for jobs and had been going to the gym more often. Id.

On February 17, 2016, Mr. Maus, R.N., completed another in-home assessment of

17cv1617-LAB (BLM)

Plaintiff. <u>Id.</u> at 452. Plaintiff's presenting problems were "PTSD: depression/anxiety symptoms, chronic pain." <u>Id.</u> at 454. Plaintiff noted that he was having trouble to find an antidepressant medication that does not cause too many unwanted side effects. <u>Id.</u> Plaintiff continued to report "mood swings and anxiety." <u>Id.</u> at 455.

On March 8, 2016, Plaintiff saw a clinical psychologist, Michael R. Reider, Ph.D., for his mental health issues. <u>Id.</u> at 642. Plaintiff "reported symptoms which were confirmed by his wife (in attendance) with criteria for Bipolar Disorder relating to Traumatic Brain Injury." <u>Id.</u> "They both reported manic episodes in which he exhibits almost psychotic laughter regarding violent thoughts or events. This can be followed by days of not wanting to go outside due to depressive symptoms." <u>Id.</u> at 642. Dr. Reider recommended anti-anxiety medication to control his daily angry outbursts. <u>Id.</u> Dr. Reider noted that Plaintiff was taking Inderal, but Dr. Reider believed that Xanax or Buspar may be more appropriate for his current level of anger. <u>Id.</u> Dr. Reider also noted that "[t]he anti-depressant may be energizing his chronic angry impulses." <u>Id.</u>

On March 23, 2016, Plaintiff was evaluated by his psychiatrist, Dr. Flood. <u>Id.</u> at 422. Dr. Flood clinically examined Plaintiff, conducted a mental examination, and provided medical support, including psychotherapy, for Plaintiff's PTSD. <u>Id.</u> Dr. Flood indicated:

> Mr. Fanlo states that he is seeing Dr. Reider, psychologist, who is treating him for PTSD. Dr. Reider also thinks that Mr. Fanlo has 'Bipolar Disorder related to Traumatic Brain Injury.' He reports symptoms of irritability that occurs very quickly, and then 'goes away very quickly.' He reports that sometimes he 'starts to laugh uncontrollably and hits himself in the head at the same time. I laugh and I cry at the same time. . . Mr. Fanlo's wife works and Mr. Fanlo picks up their son every day at school at 11:00. He spends the rest of the day with his son, usually watching TV and playing video games.

<u>Id.</u> at 423. Dr. Flood noted in his "plan" for Plaintiff that he will update certain of Plaintiff's psychiatric medications, and "[w]ill consider inpatient treatment for PTSD if medicine not helpful." <u>Id.</u> at 425.

On March 30, 2016, Dr. Flood completed a Mental Impairment Residual Functional Capacity Questionnaire form for Plaintiff. <u>Id.</u> at 470. Dr. Flood stated that beginning on February

13

23, 2015, he began treating Plaintiff "every four months." Id. Dr. Flood noted that Plaintiff's disabling conditions were PTSD (post-traumatic stress disorder) and "chronic back pain." Id. Dr. Flood further noted that Plaintiff "was rated at 100% disabled by the VA [Veterans Affairs] due to PTSD." Id. Dr. Flood opined that Plaintiff was unable to work due to his PTSD. Id. at 472. Dr. Flood found that Plaintiff was "unable to meet competitive standards" in all categories of "mental abilities and aptitudes needed to do unskilled work." Id. In sum, Dr. Flood opined that Plaintiff was "very depressed – can't work at all" and that he "needs to be classified as completely disabled." Id. at 472-473.

On April 27, 2016, Dr. Flood saw Plaintiff for a follow-up psychiatric visit for his PTSD. Id. at 708. Dr. Flood advised Plaintiff to continue taking "sertraline and buspirone" and discontinue divalproex. Id. Dr. Flood noted that he will "consider inpatient treatment for PTSD if medications not helpful." Id.

On July 27, 2016, Dr. Flood saw Plaintiff for a follow-up psychiatric visit. Id. at 683-687. Dr. Flood offered Plaintiff "clarifying psychotherapy" and they "discussed issues within his family and ways of coping with stressors in the context of PTSD." Id. at 684. Dr. Flood noted that Plaintiff continued to suffer from his PTSD from combat trauma, and that his "relevant stressors" included "work stress." Id. at 687. Dr. Flood also noted that Plaintiff's "effects of psychiatric symptomology on overall functioning" were "severe." Id. Dr. Flood noted that he will "consider inpatient treatment for PTSD if medications not helpful." Id.

## C. **Plaintiff's Evaluations by State Agency Physicians, G. Rivera-Miya, M.D. and Yanira Olaya, M.D.**

On February 11, 2016, non-examining doctor G. Rivera-Miya, M.D., reviewed Plaintiff's medical records and completed a Disability Determination Explanation for Plaintiff. Id. at 71-82. Dr. Rivera-Miya concluded that Plaintiff was not disabled and that despite some limitations that prevented Plaintiff from doing his past work, Plaintiff was "able to perform work that is less demanding." Id. at 82. Dr. Rivera-Miya found that "clmt continued to c/o anger issues. Did not participate in anger management classes, due to fear of anger in groups. [] However, [Plaintiff] remain[s] quite functional. Clmt traveled to Philippines with family and appears to be attending

17cv1617-LAB (BLM)

some type of classes. Evidence does not support ongoing marked psych limitations. Clmt is able to sustain at unskilled work for 40hr/wk. . . . ." Id. at 80.

On May 20, 2016, Dr. Yanira Olaya reviewed Plaintiff's case and found that the evidence was consistent with non-severe impairment and adopted Dr. Rivera-Miya's findings. Id. at 95. Doctor Olaya opined that "clmt is severe but can do unskilled tasks in a non-public setting." Id. at 89. Dr. Olaya further noted that Dr. Flood's opinion was more restrictive than her findings, but found that Dr. Flood's "opinion relies heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence does not support the opinion." Id. at 96.

### D. **Analysis**

Here, Plaintiff's treating doctor's opinion was contradicted by two non-examining, non-treating doctors, Dr. Rivera-Miya and Dr. Olaya. Dr. Flood, Plaintiff's treating psychiatrist, opined that Plaintiff was "very depressed – can't work at all" and that he "needs to be classified as completely disabled." Id. at 472-473. Drs. Rivera-Miya and Olaya completed a Disability Determination Explanation and found that Plaintiff was not disabled and that Plaintiff could perform unskilled work for 40 hours/week, with limited public contact. Id. at 89-95. Accordingly, the ALJ was required to provide specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Dr. Flood. Turner, 613 F. 3d at 1222. Since Drs. Rivera-Miya and Olaya are non-examining doctors, the ALJ must also demonstrate that her opinion was supported by other independent evidence in the record. Townsend, 2013 WL 4501476 at *6. The ALJ has failed to do so.

The ALJ stated that she gave "little weight" to the opinion of treating doctor, Dr. Flood, because "there is no evidence in the medical record that would support limiting the claimant's ability to such extreme mental limitations, such as intensive inpatient psychiatric care." AR 27. The ALJ opined that Dr. Flood's opinion was not very persuasive "given the lack of supporting progress notes from the V.A." Id. The ALJ further noted that the "claimant's mental condition is stable and improved with medication and therapy." Id. Finally, the ALJ noted that the claimant received "conservative treatment" which "is more than accommodating." Id. These reasons are

15

not supported by substantial evidence and do not constitute a legitimate reason for rejecting the opinion of Dr. Flood.

First, the ALJ misstates the record in support of her conclusion that "the medical evidence does not show any history of inpatient psychiatric hospitalizations, emergency room visits, suicide attempts or significant mental health treatment other than a conservative regimen." Id. at 25. According to the record, Plaintiff reported that he had a suicide attempt on February 4, 2015, "when he pick[ed] up his gun and told his wife that he was going to try and end it in June." Id. at 343. Plaintiff's wife reportedly took his weapon and encouraged him to go back on his medication. Id. at 343-344. Since then, Plaintiff "return[ed] to school, exercise[d], and decreased his depression." Id. Plaintiff still said he had "occasional thoughts of suicide, but denied any plans, intent, or suicidal behavior." Id. Similarly, on July 23, 2015, Plaintiff reported "continued anger. . . He has spoken about taking his meds to end his life although he states he is prevented by following through with suicidal plans as he needs to continue to be present for his wife and children." Id. at 843. In addition, while Dr. Flood has not placed Plaintiff in an inpatient treatment program, Dr. Flood is sufficiently concerned about Plaintiff's precarious mental health situation that he has repeatedly indicated that he will "consider inpatient treatment for PTSD if medications are not helpful." Id. at 425, 684, 708.

Second, the ALJ also misstates the record in support of her conclusion that "the claimant's mental condition is stable and improved with medication and therapy." Id. at 27. The ALJ cited select "progress notes" from January 2016, when Plaintiff said he had been applying for jobs and going to the gym more often [AR 26 (citing Exhibit 11F, page 95)], and March 2016, when Plaintiff indicated that he picked up his son from school daily and spent the rest of the day with his son watching television and playing video games [AR 26 (citing Exhibit 3F, page 19)]. Notably, the ALJ failed to consider or provide reasons for rejecting contradictory information contained in Plaintiff's medical records. For example, on February 17, 2016, Mr. Maus, R.N., completed an in-home assessment of Plaintiff and Plaintiff presented with "PTSD: depression/anxiety symptoms, chronic pain." Id. at 454. Plaintiff noted that he was having trouble finding an antidepressant medication that does not cause too many unwanted side

effects. Id. Plaintiff continued to report "mood swings and anxiety." Id. at 455. Similarly, on March 8, 2016, Plaintiff saw a clinical psychologist, Michael R. Reider, Ph.D., for his mental health issues. Id. at 642. Plaintiff "reported symptoms which were confirmed by his wife (in attendance) with criteria for Bipolar Disorder relating to Traumatic Brain Injury." Id. "They both reported manic episodes in which he exhibits almost psychotic laughter regarding violent thoughts or events. This can be followed by days of not wanting to go outside due to depressive symptoms." Id. at 642. Dr. Reider recommended anti-anxiety medication to control his daily angry outbursts. Id. Dr. Reider noted that Plaintiff was taking Inderal, but Dr. Reider believed that Xanax or Buspar may be more appropriate for his current level of anger. Id. Dr. Reider also noted that "[t]he anti-depressant may be energizing his chronic angry impulses." Id. Also, at least at one point during the relevant time period, Plaintiff's mother was living with his family to help care for their son. Id. at 363. The ALJ cherry-picked Plaintiff's progress notes from January 2016 and March 2016 to support her conclusion that Plaintiff was stable and improving, but the ALJ failed to acknowledge progress notes from the same time period that directly contradicted her conclusion.

Finally, as to the alleged "lack of supporting progress from the V.A.," the ALJ focuses on the statements made by Plaintiff regarding the improvements at select visits and ignores the numerous statements by Plaintiff regarding his continued mood swings, anxiety, and unpredictable angry outbursts. The ALJ is not permitted to "cherry-pick" only the records that support her position. See Heser v. Colvin, 2014 WL 6733649, at *4-5 (D. Mont. Nov. 17, 2014) (finding that the ALJ impermissibly cherry-picked records by relying on episodes of plaintiff's improvements without considering plaintiff's ongoing symptoms, limitations, and reasons for not pursing further treatment and by recognizing that medications were helpful in treating plaintiff's pain without considering that her disability resulted in flare-ups of pain that would come and go) (citing Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004) ("The ALJ is not entitled to pick and choose from a medical opinion, using only those parts that are favorable to a finding of nondisability.")); Switzer v. Heckler, 742 F.2d 382, 385–86 (7th Cir.1984) ("[T]he Secretary's attempt to use only the portions [of a report] favorable to her position, while ignoring other

parts, is improper."). Here, "[t]he Court must consider the record as a whole, weighing both the evidence that supports and detracts from the ALJ's conclusion." <u>Heser</u>, 2014 WL 6733649, at *2 (citing <u>Mayes v. Massanari</u>, 276 F.3d 453, 459 (9th Cir. 2001); <u>Desrosiers v. Sec'y of Health & Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988)).

While it is true, as the ALJ notes, that Plaintiff reported to his social worker in January 2016 that "he had been applying for jobs and going to the gym more often," Plaintiff also reported to his psychiatrist, Dr. Porras, that same month, on January 27, 2016, that he felt "numb" and stated that he did not want to do anything, suffered from poor sleep and felt tired. AR at 26 (citing 11F, page 95); <u>see also id.</u> at 305. Additionally, on March 8, 2016, Plaintiff saw Dr. Reider who found that Plaintiff met the criteria for Bipolar Disorder relating to Traumatic Brain Injury based on Plaintiff's reports of manic episodes followed by days of not wanting to go outside due to depressive symptoms. <u>Id.</u> at 642. Notably, the ALJ ignored these reports supporting Dr. Flood's ultimate findings and did not provide substantial evidence to reject Dr. Flood's opinions.

As such, the ALJ's conclusion is based upon cherry-picked positive reports of Plaintiff's mental health treatment as "stable and improved" and fails to consider or account for the negative results or side effects from medication experienced by Plaintiff. The ALJ also fails to provide the required "detailed and thorough summary of the facts and conflicting clinical evidence," does not state her own interpretations of this evidence, and does not explain why they are correct as opposed to those of Dr. Flood. <u>Orn</u>, 495 F.3d at 632; <u>see also</u> AR at 28-30. Rather, and in contravention of the relevant case law, the ALJ merely rejects the treating doctor's conclusions and adopts her own. <u>See Orn</u>, 495 F.3d at 632.

In discounting the opinion of Dr. Flood, the ALJ also failed to consider the length of the treatment relationship, the frequency of examination, or the nature and extent of the treatment relationship between Dr. Flood and Plaintiff. <u>See</u> 20 C.F.R. 404.1527(c); <u>see also</u> <u>Pierce v. Colvin</u>, 2014 WL 2159388, at *2 (C.D. Cal. May 23, 2014) (stating that "[e]ven when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of

examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization") (citing Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001)).

In sum, the opinion of Dr. Flood was consistent with the totality of the objective medical evidence and the ALJ failed to provide a specific and legitimate reason, supported by substantial evidence, for rejecting Dr. Flood's opinion.

## E. **Remand v. Reversal**

"The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court." McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). "Remand for further administrative proceedings is appropriate if enhancement of the record would be useful." Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004). On the other hand, if the record has been fully developed such that further administrative proceedings would serve no purpose, "the district court should remand for an immediate award of benefits." Id. "More specifically, the district court should credit evidence that was rejected during the administrative process and remand for an immediate award of benefits if (1) the ALJ failed to provide legally sufficient reasons for rejecting the evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." Id. (citing Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir. 2000), McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002), and Smolen v. Chater, 80 F.3d 1273, 1292 (9th Cir. 1996)). The Ninth Circuit has not definitely stated whether the "credit-as-true" rule is mandatory or discretionary. See Vasquez v. Astrue, 572 F.3d 586, 593 (9th Cir. 2009) (acknowledging that there is a split of authority in the Circuit but declining to resolve the conflict); Luna v. Astrue, 623 F.3d 1032, 1035 (9th Cir. 2010) (finding rule is not mandatory where "there are 'outstanding issues that must be resolved before a proper disability determination can be made'"); Shilts v. Astrue, 400 F. App'x 183, 184-85 (9th Cir. 2010) (explaining that "evidence should be credited as true and an action remanded for an immediate award of benefits only if [the Smolen test is satisfied]").

Here, the Court finds that further administrative proceedings would be beneficial as it is not clear from this record that the ALJ would be required to find Plaintiff disabled. Accordingly, this Court **RECOMMENDS REVERSING** the decision of the ALJ and **REMANDING** for further proceedings to address the errors noted above.

**V.   CONCLUSION**

For the reasons set forth above, this Court **RECOMMENDS** that Plaintiff's Motion for Summary Judgment be **GRANTED,** and Defendant's Cross-Motion for Summary Judgment be **DENIED**.

**IT IS HEREBY ORDERED** that any written objections to this Report and Recommendation must be filed with the Court and served on all parties no later than **April 13, 2018.**  The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **April 20, 2018.** The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Yist, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS SO ORDERED**.

Dated:  3/28/2018

_Barbara F Major_
Hon. Barbara L. Major
United States Magistrate Judge

17cv1617-LAB (BLM)